IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ANGELICA MARIE TRUJILLO,

        Plaintiff,

v.                                                                         No. CV 21-702 CG

KILOLO KIJAKAZI,[1]
Commissioner of the
Social Security Administration,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff Angelica Marie Trujillo's *Opposed Motion to Reverse and/or Remand* (the "Motion"), (Doc. 19), filed February 7, 2022; Defendant Commissioner Kilolo Kijakazi's *Response to Plaintiff's Motion to Reverse or Remand* (the "Response"), (Doc. 26), filed May 9, 2022; and Ms. Trujillo's *Reply in Support of Motion to Reverse or Remand* (the "Reply"), (Doc. 27), filed May 23, 2022.

Ms. Trujillo has previously filed two applications for disability insurance benefits which were denied in October 2015 and January 2017, respectively. (Administrative Record "AR" 77). Ms. Trujillo filed an application for disability insurance benefits on September 7, 2018, alleging disability beginning November 8, 2015, which date was later amended to April 1, 2017. (AR 39, 142). In her application, Ms. Trujillo claimed she was unable to work due to PTSD, severe anxiety, severe depression, panic attacks, headaches and body aches. (AR 170). Ms. Trujillo's application was denied initially on November 30, 2018, and upon reconsideration on May 1, 2019. (AR 170, 177). Ms.

---

[1] Kilolo Kijakazi was appointed Acting Commissioner of the Social Security Administration on July 9, 2021.

Trujillo requested a hearing before an Administrative Law Judge ("ALJ"), which was held via telephone on June 25, 2020, before ALJ Lillian Richter. (AR 142-163).

At the hearing, Ms. Trujillo appeared before ALJ Richter with her then-representative, Roy Archuleta, and impartial Vocational Expert ("VE") Leslie J. White. (AR 142). ALJ Richter issued her decision on January 7, 2021, finding Ms. Trujillo not disabled at any time between the amended disability onset date and the date of her decision. (AR 163). Ms. Trujillo then requested review of ALJ Richter's decision before the Appeals Council, which was denied on August 4, 2021, making ALJ Richter's unfavorable decision the Commissioner's final decision for purposes of judicial review. (AR 1). Ms. Trujillo now challenges ALJ Richter's January 7, 2021 decision denying her claim for disability insurance benefits. *See* (Doc. 19).

Ms. Trujillo, now represented by her attorney Benjamin Decker, argues in her Motion that her case is subject to remand for two reasons: (1) ALJ Richter failed to properly consider the mental health evidence; and (2) ALJ Richter failed to incorporate the assessment of marked limitations in interacting with coworkers, assessed by John Owen, PhD, without explanation. *See* (Doc. 19 at 22-26).

The Court has reviewed the Motion, the Response, the Reply, and the relevant law. Additionally, the Court has meticulously reviewed the administrative record. Because ALJ Richter erred in failing to properly consider the mental health evidence, the Court finds Ms. Trujillo's Motion shall be **GRANTED** and the case shall be **REMANDED** to the Commissioner for further proceedings consistent with this opinion.

I.   **Standard of Review**

The standard of review in a Social Security appeal is whether the

Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Hum. Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). The Commissioner's "failure to apply the correct legal standards, or to show . . . that she has done so, are also grounds for reversal." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for the Commissioner's. *See Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision. *See* 42 U.S.C. § 405(g) (2018). Therefore, when the Appeals Council denies review, the ALJ's decision becomes the Commissioner's final decision for purposes of judicial review. *Threet v. Barnhart*, 353 F.3d 1185, 1187 (10th Cir. 2003) (citing *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994)).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal*, 331 F.3d at 760 (quoting *Fowler v. Bowen*, 876 F.2d 1451, 1453 (10th Cir.1989)) (internal quotation marks omitted). An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*,

373 F.3d at 1118 (quoting *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir.1988)) (internal quotation marks omitted). While the Court may not re-weigh the evidence or try the issues *de novo*, its examination of the record must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citing *Sisco v. United States Dep't of Health and Human Servs.*, 10 F.3d 739, 741 (10th Cir.1993); *Washington*, 37 F.3d at 1439). However, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)) (internal quotation marks omitted).

## II.     Applicable Law and Sequential Evaluation Process

For purposes of supplemental security income and disability insurance benefits, a claimant establishes a disability when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 42 U.S.C. 1382c(a)(3)(A); 20 C.F.R. § 404.1505(a). In order to determine whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process ("SEP"). *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520.

At the first four steps of the SEP, the claimant bears the burden of showing (1) she is not engaged in "substantial gainful activity"; (2) she has a "severe medically

determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) her impairment(s) meet or equal one of the "listings" of presumptively disabling impairments found in 20 C.F.R. pt. 404, subpt. P, app. 1.; or (4) she is unable to perform her "past relevant work." 20 C.F.R. § 404.1520 (a)(4)(i–iv); *see also Grogan*, 399 F.3d at 1261. If the ALJ determines the claimant cannot engage in past relevant work, the ALJ will proceed to step five of the evaluation. 20 C.F.R. § 404.1520(g)(1); *Grogan*, 399 F.3d at 1261. At step five, the Commissioner bears the burden of showing that the claimant is able to perform other work in the national economy, the claimant's RFC, age, education, and work experience. *Grogan*, 399 F.3d at 1261.

### III. Background

In her application, Ms. Trujillo claimed she was limited in her ability to work due to PTSD, severe anxiety, severe depression, panic attacks, headaches and body aches. (AR 170). At step one, ALJ Richter determined Ms. Trujillo has not engaged in substantial gainful activity since April 1, 2017, the amended alleged disability onset date. (AR 145). At step two, ALJ Richter found Ms. Trujillo had the severe impairments of depression, dysthymic disorder, generalized anxiety disorder, panic disorder, social anxiety disorder, PTSD, excoriation disorder, insomnia, obesity, asthma, chronic headaches, diabetes mellitus, and obstructive sleep apnea. (AR 145).

At step three, ALJ Richter determined Ms. Trujillo's impairments, solely or in combination, did not meet or equal one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, or 404.1526. (AR 146). ALJ Richter then found Ms. Trujillo has the RFC to perform light work, with the following additional restrictions:

> She can occasionally stoop, kneel, crouch, crawl, and balance, can occasionally climb ramps and stairs, and can never climb ladders, ropes or scaffolds. She should avoid exposure to unprotected heights and hazardous machinery and concentrated exposure to dust, odors, fumes, and pulmonary irritants. She can perform simple routine work, can have incidental interaction with supervisors and coworkers and no interaction with members of the public, can remain on task for two hours at a time, and can make simple work related decisions in a workplace with few changes in the routine work setting.

(AR 149). In formulating Ms. Trujillo's RFC, ALJ Richter stated she considered her symptoms and the extent to which those symptoms could reasonably be accepted as consistent with objective medical and other evidence, as required by 20 C.F.R. § 404.1529 and Social Security Ruling ("SSR") 16-3p. (AR 149). ALJ Richter stated she also considered opinion evidence, consistent with the requirements of 20 C.F.R. § 404.1520c.[2] (AR 149). She concluded that while Ms. Trujillo's impairments could be expected to cause her alleged symptoms, the intensity, persistence, and limiting effects Ms. Trujillo described were not entirely consistent with the evidence in the record. (AR 156).

In evaluating the evidence, ALJ Richter found the prior administrative medical findings of state agency psychological consultants Scott Walker, MD, and James Sturgis, PhD, to be somewhat persuasive. (AR 158). She found that they based their findings upon a thorough review of the available medical records and a comprehensive understanding of agency rules and regulations. (AR 158). Additionally, ALJ Richter found that the record as a whole supports their conclusions that Ms. Trujillo's mental

---

[2] The agency issued new regulations regarding the evaluation of medical source opinions for claims filed on or after March 27, 2017. *See* "Revisions to Rules Regarding the Evaluation of Medical Evidence," 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017); *compare* 20 C.F.R. § 404.1527 ("Evaluating opinion evidence for claims filed before March 27, 2017"), *with* 20 C.F.R. § 404.1520c ("How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017"). Because Ms. Trujillo filed her claim on September 7, 2018, the later regulations apply to this matter.

impairments are not disabling. (AR 158). For the same reasons, ALJ Richter also found the prior administrative medical findings of state agency Michael Slager, MD, and Karl Boatman, MD, to be somewhat persuasive. (AR 158-159).

ALJ Richter found the opinion of consultative examiner Dr. Owen to be generally persuasive, as he performed a thorough consultative examination of the claimant and supported his opinion with detailed notes. (AR 159). However, ALJ Richter found that certain marked limitations described by Dr. Owen are inconsistent with the record as a whole. (AR 159). Similarly, ALJ Richter found unpersuasive the opinions of Edward Lobaugh, CNP, Namgyal Tsewang, MD, and Emily Everhart, LMHC, stating that "while these medical providers treated [Ms. Trujillo] over time and supported their opinions with explanations, the extent of the mental and physical limitations they described are inconsistent with the record as a whole." (AR 160).

At step four, ALJ Richter found Ms. Trujillo is unable to perform her past relevant work as a preschool aide or preschool teacher. (AR 161). ALJ Richter then proceeded to step five, finding that on April 1, 2017, Ms. Trujillo's amended alleged onset date, she was a "younger individual." (AR 161). She further found that Ms. Trujillo has at least a high school education. (AR 162). ALJ Richter found that considering VE White's testimony and Ms. Trujillo's age, education, work experience, and assessed RFC, Ms. Trujillo could also perform other work as a collator operator, routing clerk, or marker. (AR 162). After finding Ms. Trujillo was able to perform work existing in significant numbers in the national economy, ALJ Richter concluded she was "not disabled" as defined by 20 C.F.R. § 404.1520(g). (AR 163).

### IV.     Analysis

In her Motion, Ms. Trujillo presents two arguments regarding error. *See* (Doc. 19 at 22-26). First, she contends that ALJ Richter failed to consider the "frequent severely abnormal" findings in the record in assessing Ms. Trujillo's symptom testimony and the opinions of her physicians. *Id.* at 22. In particular, Ms. Trujillo argues that the record contains "numerous consistent . . . mental status examinations that are significantly abnormal for anxiety, depression, apathetic appearance, impaired attention/concentration, poor judgment, poor insight, and mood swings," and that "[t]hese extreme findings persist for well over a year." *Id.* at 22-23. Ms. Trujillo contends that ALJ Richter "never mentions or acknowledges the significantly abnormal findings and reports" from Ms. Lobaugh and Ms. Everhart's treatment notes, and that this is prejudicial error given the severity of the findings. *Id.* at 23. As the Commissioner notes, Ms. Trujillo's arguments focus on the mental health evidence; the Court therefore construes her arguments as a claim that ALJ Richter failed to properly consider the mental health evidence. *See* (Doc. 19); *see also* (Doc. 26 at 4, n.3).

The Commissioner, in turn, argues that ALJ Richter reasonably found Ms. Trujillo's statements about her symptoms not entirely consistent with the medical evidence and other evidence of record. (Doc. 26 at 10). The Commissioner alleges that Ms. Trujillo "does not point to any specific evidence to support these arguments, and her cursory arguments should be rejected." *Id.* at 12. She further contends that ALJ Richter "painstakingly summarized the vast majority of these providers' treatment notes" and "was not required to discuss every aspect of every treatment note" so long as her summary was accurate, which she argues it was here, consisting of "15 single-spaced

8

pages." *Id.*

Second, Ms. Trujillo alleges that ALJ Richter failed to incorporate marked limitations in interacting with co-workers, as opined by Dr. Owen, without explanation, despite finding Dr. Owen's opinion generally persuasive. (Doc. 19 at 25). Specifically, she argues ALJ Richter "fails to provide a meaningful rationale for adopting [Dr. Owen's] opinions on interacting with the general public and not [his opinions on] interacting with co-workers." *Id.* She argues that because interacting with co-workers is critical to performing unskilled work, this error is highly prejudicial. *Id.*

The Commissioner, however, maintains that ALJ Richter correctly applied the revised regulations in evaluating Dr. Owen's opinion. (Doc. 26 at 14). Specifically, she argues that ALJ Richter explicitly articulated why she disregarded the opined marked limitations, and that in any case, ALJ Richter's limiting Ms. Trujillo to only "incidental interaction" with coworkers is consistent with a moderate limitation in this area. *Id.* at 18-19.

### A. ALJ Richter's Consideration of the Evidence

Ms. Trujillo contends that ALJ Richter failed to consider the "frequent severely abnormal physical examination, mental status examination, and other objective test findings" in the record, resulting in an improper assessment of Ms. Trujillo's symptom testimony and the opinions of her physicians. (Doc. 19 at 22). Specifically, Ms. Trujillo maintains that ALJ Richter "never meaningfully discusses the abnormal physical examination, mental status examination, or PHQ findings contained" in the record. *Id.* at 23. Ms. Trujillo summarizes these findings extensively, citing specific records ranging from September of 2018 through January 2020 which consistently show "moderately

severe depression," "severe anxiety," and other mental health symptoms. *Id.* at 4-7. Ms. Trujillo argues that if ALJ Richter had properly considered these findings, she would have found more persuasive the opinions of Ms. Everhart and Mr. Lobaugh, both of whom found greater limitations in Ms. Trujillo's ability to work than ALJ Richter assessed in her RFC. *Id.* at 23-24; *see* (AR 160).

In response, the Commissioner contends that ALJ Richter properly concluded that Ms. Trujillo's symptoms "worsened during times of external stress . . . but stabilized when those external stressors abated." (Doc. 26 at 10). She argues that ALJ Richter "outlined the medical evidence and explained in detail the legally valid reason for [her] determination, including conflicts between [Ms. Trujillo's] statements and the medical evidence." *Id.* The Commissioner maintains that ALJ Richter's lengthy summary of the providers' treatment notes is sufficient, and that she properly accounted for some of Ms. Trujillo's statements about her symptoms, including her problems with concentration and attention. *Id.* at 12-13. Further, the Commissioner characterizes Ms. Trujillo's arguments as "vague," stating she "does not point to any specific evidence" to support her arguments, and therefore contends that "her cursory arguments should be rejected." *Id.* at 12.

   1. *The Mental Health Evidence*

In September of 2018, Ms. Trujillo was screened by Presbyterian Medical Services and the Patient Health Questionnaire ("PHQ-9") was positive for "[m]oderately severe depression," with a score of 16 out of 27 possible points. (AR 668). The Posttraumatic Stress Disorder Checklist for DSM-5 ("PCL-5") was also administered, yielding a score of 58 out of 80, which was positive for PTSD and indicated severe

anxiety. (AR 669, 671). The provider diagnosed her with PTSD, generalized anxiety disorder with panic attacks, and panic disorder. (AR 672). She also reported headaches and 6/10 pain. (AR 671).

At her follow-up appointment in October of 2018, Ms. Trujillo again tested positive for "[m]oderately severe depression," with a score of 15 on the PHQ-9. (AR 734). Under comments, treating provider Mr. Lobaugh noted, "Consider Major Depressive Disorder." (AR 735). Mr. Lobaugh also noted she was still experiencing panic attacks twice a week, and opted to increase her dosage of sertraline and added buspirone for anxiety. (AR 737). In November 2018, she scored only a 9 on the PHQ-9, showing mild depression, but reported the same level of difficulty with concentration. (AR 739); *see* (AR 734). In January of 2019, despite a "fair response to medication," Ms. Trujillo continued to experience anhedonia, anxiety, mood swings, poor insight and poor judgment. (AR 771-772). She also continued to "lack[] concentration." (AR 773).

Then, in June of 2019, treating provider Mr. Lobaugh reported Ms. Trujillo's symptoms were "fairly controlled," but also, somewhat contradictorily, noted that her "symptoms have increased" since the last visit. (AAR 775). He also noted she still experienced "anxious/fearful thoughts, depressed mood, [and] difficulty concentrating." (AR 775). Mr. Lobaugh opined that Ms. Trujillo's "intense anxiety along with panic," together with her other symptoms, "would cause her to miss more than 3 days per week of work." (AR 775). He also stated "[s]he would not be able to follow regular instructions or work a normal work week," and that "[h]er anxiety affects her ability to concentrate, focus, stay on task and complete tasks." (AR 775). At that point, she said she was having "4 to 5 panic attacks per week" and that her anxiety prevented her from going

shopping or being in crowds. (AR 778). Mr. Lobaugh again adjusted Ms. Trujillo's medication. (AR 778).

In August of 2019, Ms. Trujillo presented to Mr. Lobaugh tearful, stating that her symptoms had worsened: "[s]he has been feeling more anxious, having trouble sleeping. She is tearful during the day." (AR 780). One medication resulted in "mild improvement" while another caused her to feel "more agitated and anxious," while a third "ha[d] not helped decrease intrusive thoughts, anxiety or nightmares." (AR 780). She again reported difficulty concentrating, (AR 781), and her provider reported anhedonia, anxiety, mood swings and poor judgment, (AR 782). Mr. Lobaugh found that despite her ongoing treatment with multiple psychiatric medications, Ms. Trujillo was experiencing a "[m]oderate episode of recurrent major depressive disorder." (AR 783). In October 2019, Mr. Lobaugh again reported Ms. Trujillo continued to experience anxiety, difficulty concentrating, anhedonia ("little interest or pleasure in doing things"), and depression, among other symptoms. (AR 791).

In addition to medication, Ms. Trujillo also participated in therapy, beginning in November of 2018. (AR 827). Her therapist, Ms. Everhart, reported in a letter that despite attending at least fifteen therapy sessions between November 2018 and June of 2019, Ms. Trujillo continued to experience "significant functional impairment in her daily life resultant from her PTSD and anxiety symptomology." (AR 827). In September of 2019, Ms. Trujillo's PHQ-9 revealed a score of 20, which indicated severe depression, and her PCL-5 result was 56 out of 80, which indicated PTSD and severe anxiety. (AR 837). Ms. Trujillo continued undergoing weekly therapy at least through January of 2020, at which point Ms. Everhart noted in a second letter that despite "positive

progress" over the course of her treatment, Ms. Trujillo continued to experience anxiety and depression. (AR 844). Ms. Everhart also submitted a multi-page medical source statement in January of 2020, in which she opined that Ms. Trujillo suffers from numerous marked limitations in the mental abilities and aptitudes needed to perform competitive work. (AR 845-849).

### 2. ALJ Richter's Discussion of the Mental Health Evidence

ALJ Richter discussed the evidence of Ms. Trujillo's mental health treatment at length, including the treatment notes by Mr. Lobaugh and medical source statements by Ms. Everhart.[3] (AR 153, 160). For example, ALJ Richter explained in her summary of the evidence that Mr. Lobaugh increased her sertraline in October 2018, but that her depression and anxiety continued through November. (AR 153). ALJ Richter noted Mr. Lobaugh's finding that Ms. Trujillo's symptoms had improved in January 2019, and that he nonetheless increased her sertraline the following month. (AR 153). ALJ Richter discussed Mr. Lobaugh's continued medication adjustments in response to Ms. Trujillo's ongoing anxiety and depression, which appeared to coincide temporally with her daughter's relapse. (AR 153).

ALJ Richter also noted Mr. Lobaugh's starting Ms. Trujillo on a new medication for her nightmares, and adjusting her other medications to aid with her feeling "agitated and irritable and having trouble sleeping." (AR 154). She discussed Mr. Lobaugh's medication adjustment in August 2019, when Ms. Trujillo reported "experiencing more anxiety at night and trouble falling asleep," and then in September 2019 when Ms. Trujillo reported side effects of a recent new medication. (AR 154). Finally, ALJ Richter

---

[3] It appears that weekly treatment notes by Ms. Everhart remain absent from the record, as noted by ALJ Richter at the hearing. *See* (AR 66).

13

stated that Mr. Lobaugh noted improvement with medication in Ms. Trujillo's final visit. (AR 155).

### 3. Whether ALJ Richter's Discussion of the Mental Health Evidence Constitutes Error

In her decision, ALJ Richter noted that Ms. Trujillo suffers from generalized anxiety disorder, panic disorder, social anxiety disorder, PTSD, and excoriation disorder. (AR 150). While ALJ Richter specifically mentioned Ms. Trujillo's PHQ-9 depression screening from November 2018, however, which indicated mild depression, (AR 153), she at no point in her decision mentioned Ms. Trujillo's various other PHQ-9 results for moderately severe depression, or Mr. Lobaugh or Ms. Everhart's appointment notes regarding her major depressive episode. (AR 142-163); *see* (AR 668, 734, 783, 786, 835). ALJ Richter also never mentioned Ms. Trujillo's PCL-5 scores or the repeated references by her medical providers to her "severe anxiety." (AR 142-163); *see* (AR 671, 730, 743, 837, 1314, 1319).

ALJ Richter noted Ms. Trujillo's increased anxiety in April 2019, mentioning that around this time "her daughter had relapsed and had been breaking into her home, which was a significant stressor. . . . [Ms. Trujillo] continued to report struggling with her daughter, who had an addiction . . . and reported that her daughter had recently relapsed and been arrested by the police" in May 2019. (AR 153). ALJ Richter failed to discuss, however, that the very trauma underlying her PTSD diagnosis includes both the violence she suffered at the hands of her ex-husband, and her daughter's suicide attempt. *See* (AR 670).

The Commissioner argues that Ms. Trujillo's symptoms "waxed and waned largely based on external stressors, including familial difficulties, and memories of past

14

traumatic events." (Doc. 26 at 16). Of course, Ms. Trujillo's memories of past traumatic events are the *source* of her well-documented PTSD. Indeed, provider notes include an account of her PTSD's relationship to drug use by her abusive ex-husband, and explained how her daughter's drug use triggers her PTSD:

> Her biggest trauma was when she was with her ex-husband who was into drugs and reportedly died of an overdose. She reports that her daughter has been using drugs too and is now going into treatment. She feels that her ex-husband influenced her daughter to do drugs because she claims that her daughter is addicted [to] heroin and meth. [Ms. Trujillo] also reports that she experiences panic attacks when she worries a lot.

(AR 671). Ms. Trujillo explained to her provider that "many things trigger her traumatic memories" such as seeing her daughter's boyfriend die of an overdose, and that she has "nightmares about [her] daughter's boyfriend killing [her] daughter." (AR 671).

According to the Agency's own regulations, symptoms of PTSD include "distressing memories, dreams, and flashbacks related to the trauma or stressor." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.15. The regulations therefore contemplate that individuals suffering from PTSD may have extreme responses to external stressors, such as Ms. Trujillo's worrying about her daughter's relationship with drugs, and the possibility of her being a victim of violence, resulting in nightmares and panic attacks. *Id.*; *see* (AR 671). The Commissioner's position that Ms. Trujillo is not disabled because her difficulties stem from "external stressors, including familial difficulties, and memories of past traumatic events" is thus profoundly inapposite. (Doc. 26 at 16).

The Commissioner also contends that "Plaintiff does not point to any specific evidence to support" her argument that ALJ Richter failed to account for "the consistent pattern of severely abnormal" findings. *Id.* at 12. The Court notes that Ms. Trujillo discusses her alleged consistent pattern of severely abnormal results at length earlier in

her brief, and then specifically refers back to it in her argument section. (Doc. 19 at 4-8, 22). This argument is therefore unavailing.

Finally, the Commissioner argues that ALJ Richter was not required to discuss "every aspect of every treatment note so long as she accurately summarized the record." (Doc. 26 at 13). However, the inclusion by ALJ Richter of only the PHQ score of Ms. Trujillo most favorable to a finding of non-disability, together with selective omission of all of her more severe scores, suggests that ALJ Richter engaged in impermissible cherry-picking. *See Bryant v. Comm'r, SSA*, 753 F. App'x 637, 641 (10th Cir. 2018); *Zambrano v. Saul*, 1:19-cv-896 KWR/CG, 2020 WL 6262992, at *3 (D.N.M. Oct. 23, 2020). Additionally, ALJ Richter found that Ms. Trujillo suffers from depression, dysthymic disorder, generalized anxiety disorder, panic disorder, social anxiety disorder, PTSD, and excoriation disorder, among other severe impairments. (AR 145). The severely abnormal mental health findings were thus significant, probative evidence ALJ Richter was required to discuss and weigh in order for substantial evidence to support her findings. *See Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (stating substantial evidence requires an ALJ discuss "uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects," and the evidence supporting his decision) (citation omitted). ALJ Richter thus erred in failing to discuss these findings, even to explain why she rejected them.

### 4. Whether ALJ Richter's Failure to Properly Consider the Mental Health Evidence Constitutes Harmful Error

An ALJ's error may be considered harmless in exceptional circumstances, "where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct

analysis, could have resolved the factual matter in any other way." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). In the context of analyzing objective evidence, the Tenth Circuit "allow[s] the ALJ to engage in less extensive analysis where 'none of the record medical evidence conflicts with [his RFC] conclusion.'" *Wall v. Astrue*, 561 F.3d 1048, 1068-69 (10th Cir. 2009) (citing *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004)). It is clear that "when the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened." *Howard*, 379 F.3d at 947.

      *a. The Effect of ALJ Richter's Error on the Weighing of Opinion Evidence*

First, ALJ Richter's consideration of the medical source opinions may have been different had she properly considered the evidence regarding Ms. Trujillo's mental health. For example, ALJ Richter found the opinion of Mr. Lobaugh to be unpersuasive, even though he treated Ms. Trujillo "over time and supported [his] opinion[] with explanations," as "the extent of the mental . . . limitations described are inconsistent with the record as a whole." (AR 160). If ALJ Richter had properly considered Mr. Lobaugh's consistent findings of severe mental health impairment, however, she might have afforded his opinion more weight, as it included a consistent assessment of "intense anxiety along with panic" which "affects her ability to concentrate, focus, stay on task and complete tasks." (AR 775). This could have resulted in a finding of disability, as Mr. Lobaugh opined that Ms. Trujillo would miss more than three days of work per week, which is preclusive of competitive work. (AR 775).

For the same reasons, ALJ Richter found the opinion of Ms. Everhart unpersuasive. (AR 160). Had she properly considered the consistent severely abnormal

17

mental health findings, however, she may have afforded Ms. Everhart's opinion more weight, as it included a consistent assessment that Ms. Trujillo "consistently exhibits symptoms of significant PTSD, anxiety and depression . . . anxiety attacks, anhedonia [and] emotional instability." (AR 845). This could also have resulted in a finding of disability, as Ms. Everhart opined that Ms. Trujillo lacked the ability to meet competitive standards in various areas of vocational ability, including the ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms; perform at a consistent pace; and deal with normal work stress. (AR 847-848).

Finally, while ALJ Richter found the opinion of consultative examiner Dr. Owen to be generally persuasive, she found that certain marked limitations assessed by Dr. Owen were inconsistent with the record as a whole. (AR 159). Had ALJ Richter properly considered the mental health evidence, including the evidence of severe anxiety including social anxiety disorder, she may have found persuasive Dr. Owen's assessment of "moderate to marked" limitations on interacting with coworkers. (AR 1391). Given that interacting with coworkers is critical to the performance of unskilled work, this may have resulted in a finding of disability. *See* SSR 96–9p, 1996 WL 374185, at *9 (unskilled work requires "[r]esponding appropriately to . . . co-workers"). ALJ Richter may thus have reached a different conclusion regarding Ms. Trujillo's disability if she had afforded greater weight to the opinions of Mr. Lobaugh, Ms. Everhart, and Dr. Owen in light of the consistently severe mental health findings.

    *b. The Effect of ALJ Richter's Error on the RFC Assessment*

The Commissioner contends that even to the extent that ALJ Richter may have

18

erred, such error was not harmful because ALJ Richter limited Ms. Trujillo's RFC "to account for many of her statements about her symptoms, including concentration and attention issues." (Doc. 26 at 13). Given the foregoing evidence, however, a reasonable factfinder could conclude, for instance, that Ms. Trujillo's undisputed severe impairments of depression, dysthymic disorder, generalized anxiety disorder, panic disorder, social anxiety disorder, excoriation disorder, and PTSD could result in good days and bad days, which could account for periodic milder findings while still resulting in her missing more than four days of work per month. *See* (AR 145, 775, 847-848). Ms. Trujillo's capacity for attendance is part of her RFC. *See* 20 C.F.R. §§ 404.1545(c), 416.945(c); 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00E3; *see also Markham v. Califano*, 601 F.2d 533, 534 (10th Cir. 1979). The extent to which Ms. Trujillo can work, and the ultimate question of disability, must be determined in light of that restriction. *See* 15 SSR 85-16, 1985 WL 56855, at *2. If ALJ Richter had properly considered the mental health evidence, she may have afforded more weight to the opinions of Mr. Lobaugh, Ms. Everhart, and Dr. Owen, resulting in a more restrictive assessment of Ms. Trujillo's mental RFC including a limitation on her capacity for attendance.

ALJ Richter's failure to properly consider the mental health evidence leaves the Court with no guidance to perform a meaningful review of ALJ Richter's analysis of (1) the proper weight to afford the opinions of the medical sources on Ms. Trujillo's mental limitations, or (2) Ms. Trujillo's mental limitations in the context of her RFC. Therefore, ALJ Richter's failure to properly consider the pattern of severely abnormal mental health findings, even merely to explain why she disregarded it, constitutes harmful and reversible error. *Ledford v. Barnhart*, 197 F. App'x 808, 811 (10th Cir. Oct. 19, 2006)

("The failure to apply the correct legal standard[s] or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal.") (citations omitted). The Court thus finds that remand is appropriate. Because the Court finds these reasons alone constitute harmful error mandating remand, the Court will not address the parties' arguments regarding additional errors.

## V.     Conclusion

For the foregoing reasons, the Court finds ALJ Richter erred in failing to properly consider the mental health evidence. In addition, because the Court finds this is a harmful error, the Court will not address Ms. Trujillo's remaining arguments.

**IT IS THEREFORE ORDERED** that Ms. Trujillo's *Opposed Motion to Reverse and/or Remand*, (Doc. 19), is **GRANTED.** This case is **REMANDED** for further proceedings consistent with this Order**.**

**IT IS SO ORDERED**.

_____
THE HONORABLE CARMEN E. GARZA
CHIEF UNITED STATES MAGISTRATE JUDGE